## WILLIAM DOYLE *versus* JAMES P. WHITE.

Where the plaintiff had contracted to deliver a quantity of rock to a third person at an agreed piice; and before the delivery to him, made known to the defendant his determination not to deliver the rock upon the credit of such third person; and the defendant thereupon said to the plaintiff— *" You bring the rock and I will see you paid for it"* — *it was held by the Court,* that such parol promise was within the statute of frauds, and not binding upon the defendant.

And in such case, if the delivery of the rock was upon the credit of the defendant as an original promisor, the plaintiff would be entitled to recover. But if the original contract was made with the third person, and the defendant agreed only, by parol, to pay for the rock as a surety or guarantor, the plaintiff could not sustain his action, unless the promise was made upon some new consideration, other than the delivery of the rock. Any expectation of profit or hope of benefit from the sale of goods by the defendant to such third person, in consequence of his proceeding to build a house on being furnished by the plaintiff with rock for the cellar, would not constitute a sufficient consideration for such promise.

Where " a mortgage was given to secure the gross sum of twenty-five hundred dollars, which might be furnished in goods and materials towards the erection of a house for the mortgagor," a collateral liability, or one assumed as surety or guarantor would not be within its terms, and would not be secured thereby.

THIS is an action of the case to recover the value of a quantity of square granite rock.

SHEPLEY J. presided at the trial.

The bill of exceptions states, " that the plaintiff introduced testimony to prove that one John Doyle built a house in Belfast, in the spring and summer of 1841; that the firm of White, Faunce & Co. (the defendant being one of the firm,) had agreed to furnish said John Doyle, and did furnish him, ten or fifteen hundred dollars in such goods and materials as he might want, towards the erection of said house; and after they had furnished the amount of about $400, they took a mortgage of said house to secure the payment of the same, and whatever further materials they might furnish; and that said rock were wanted for the cellar of said house, and a part thereof were put into the same.

" The plaintiff then introduced as witnesses, Wm. T. Elwell and Edwin Doyle. Said Doyle testified, that about the mid-

dle of March, 1841, he was in White, Faunce & Co's store, in Belfast, and the defendant asked him if the plaintiff was going to bring the rock, and he replied no, not unless he knew who was going to pay him ; whereupon the defendant said, you tell the plaintiff, if he will bring the rock *I will see that he has his pay.* Said witness further testified that he delivered said message to the plaintiff, and the plaintiff about the first of April, then next, went after a cargo of said rock, carried it to Belfast, and delivered it to the defendant, who was present, selected the wharf and place where it should be landed ; that John Doyle was not present when said message was sent to the plaintiff, nor when the rock was delivered to defendant. Said Elwell testified, that on the last of March, 1841, he was present at a conversation between plaintiff and defendant, in said White, Faunce & Co's store ; that the defendant asked the plaintiff if he intended to bring the rock, and the plaintiff said no, not upon the credit or responsibility of John Doyle. The defendant replied, you bring the rock and *I will see you paid for it ;* and the plaintiff answered, then I will bring it ; and in a few days after, he, the witness, and the plaintiff, went after a cargo of said rock, carried it to Belfast, and delivered it to the defendant, who was present and directed the wharf and place where it should be landed ; that about the first of July following, he and the plaintiff went after another cargo of said rock, which was carried and delivered, the defendant being present part of the time said rock was unloading, in same manner that the first cargo was delivered ; that John Doyle was not present when the said promise was made, nor when the rock were delivered ; that the amount of both cargoes delivered to defendant was rising of eighty-two tons, and worth two dollars per ton. In the last cargo, in addition to the rock delivered to defendant, was about one hundred feet of underpinning rock, brought for John Doyle, and landed on the wharf by itself.

"The defendant introduced testimony, tending to show, that the plaintiff did not claim pay for the rock of the defendant, till just before the date of the writ ; that he had said several

times that John Doyle owed him for the rock ; that he was sued by White, Faunce & Co., and paid the demand, without urging his claim for the rock in set-off; that White, Faunce & Co. were not to furnish materials for the cellar of said house but that said John Doyle had employed one Jonas S. Barrett to build the cellar by the job, and had sold said rock to him in part payment for doing said job. The defendant also introduced Daniel Faunce, one of said firm, and Mrs. Doyle, the administratrix of said John Doyle's estate. Said Faunce testified, that in the latter part of the winter previous to the delivery of the rock, he was present and heard the plaintiff contract with John Doyle, and agree to sell him the rock at two dollars per ton, and that said John was to take up, in part payment for the same, a note of about $50 due from the plaintiff to Kimball & White, which he did not do, but which was sued in the before named action, White, Faunce & Co. *v.* the plaintiff, and afterwards paid by the plaintiff; and that nothing was said by either party as to how the balance should be paid ; that White, Faunce & Co. and John Doyle made a final settlement of their accounts in October, 1842, when notes were given by said John to said company for the balance found due to them ; and that the rock were not charged to said John, nor included in said settlement ; that in the spring and summer of 1841, said John Doyle was occasionally absent from home, being a seafaring man, and that in his absence, the defendant was occasionally called upon to attend to his business, and did so attend.

Mrs. Doyle testified, that in the fall of 1843 she heard the plaintiff say that John Doyle owed him for the rock, which went into the house, but could not say whether he referred to underpinning rock or square rock. She further testified on cross-examination, that in the fall of 1843, she called on the defendant to know the amount White, Faunce and Co. claimed under their mortgage, and he then claimed $1203 ; that in December, 1844, she sold the house at public auction subject to the right of dower, the White, Faunce & Co. mortgage and another mortgage of $170 ; and at the time of said

sale the defendant represented the amount due under the first named mortgage to be $1900, and then claimed that amount under the same, and that he bid in said house and the land on which it stood for the sum of one dollar, and that said house cost rising of four thousand dollars and had received no injury, except the ordinary wear and tear. It was in evidence, that the value of said property was at the time of trial about $2000. John Doyle died in August, 1843.

The exceptions also state, that the plaintiff's counsel made the following points to the Court and jury, and verbally in his argument asked the Judge to rule according to them.

1st. That if the jury should find, that the plaintiff had contracted to sell the rock to John Doyle prior to the defendant's said promise to see him paid for it, still, if before its delivery, the plaintiff refused to deliver it on the credit of said John, but delivered it to the defendant, upon the strength and credit of his said promise, then his said promise would be binding although not in writing.

2. That if the jury should find, that the plaintiff had contracted and agreed to sell the rock to John Doyle prior to the defendant's said promise, still, if before its delivery, the plaintiff refused to deliver it on the credit of said John, but delivered it to the defendant on the strength and credit of his said promise, then said promise would be binding, although not in writing, if he made the promise to enable him and his said copartners to reap a profit on the goods and materials they had contracted to furnish for said house, or otherwise to promote his own interest or purposes, although said promise was made as surety or guarantor of John Doyle.

3. That if they should find, that the defendant had claimed and received pay for said rock under said mortgage, he would be liable to pay the plaintiff for the same, if he promised so to do before its delivery, even if he promised as surety or guarantor, and the promise was not in writing.

The Judge declined to rule according to the above points urged to the Court and jury and according to the verbal request made to the Judge in the argument, but instructed the

jury as follows: — That the difference between an original and collateral promise is, that an original promise is understood to refer to the ordinary case of a sale and purchase of personal property, and that by a collateral one is understood to be another distinct and additional promise, made by another person, to pay or be accountable for the same goods for which the person making the original promise was also liable; that if they were satisfied, that the rock were delivered to the defendant upon his credit as an original promisor, the plaintiff would be entitled to recover; that if not satisfied that it was so delivered, but were satisfied, that it was originally contracted to John Doyle, and that the defendant agreed to see the plaintiff paid for it, as surety or guarantor, he could not recover, such promise not being in writing, unless they should find that said promise was made upon some new consideration, other than the delivery of the rock, and that any expectation of profit or hope of benefit, that might be anticipated from goods that might be furnished by defendant to John Doyle, if by reason of the stone being furnished for the cellar he should be enabled to proceed in building his house, would not constitute a sufficient consideration to make such collateral promise binding upon the defendant. That if satisfied that there was a settlement between the defendant and John Doyle, of all demands between them, in the year 1842, and a balance found and that notes were given for such balance, no other sum could be considered as secured or received by that mortgage, unless there was proof of subsequent dealings between them, or of some error committed in that settlement, and under such circumstances the defendant's statement, that $1900 were due on it would be but a misstatement of a fact.

"To which instructions the plaintiff's counsel excepts and prays that said exceptions may be allowed.

"N. & H. B. Abbot, Att'ys to Plaintiff."

"These exceptions having been presented before the adjournment of the Court without day and found conformable to the truth, it being understood that no request was other-

wise refused, than by giving the stated instructions only, are allowed.                               " Ether Shepley."

*N. & H. B. Abbott,* for the plaintiff, said they should rely, that the instructions given by the Judge to the jury were erroneous.

To determine whether instructions to the jury be, or be not correct, they should be considered in connexion with the evidence in the case, and as applicable to it. *Blake* v. *Irish,* 21 Maine R. 450; *Lyman* v. *Redman,* 23 Maine R. 289.

Although instructions be correct, when applied to certain facts in the case, yet if, when applied to certain other facts in the case, they are calculated to have an improper influence on the jury, the Court will, for that reason, set aside the verdict. *Pierce* v. *Whitney,* 22 Maine R. 113. The Judge, in his instructions, treated the contract to sell the rock to John Doyle as a perfected sale. This when taken in connexion with the testimony, was calculated to mislead.

The Judge erred in his instructions as to what constituted an original promise. He in effect told the jury, that if they should find, that the rock had been contracted to John Doyle as a principal debtor of the plaintiff, then the defendant must be a collateral promisor and not liable, his promise not being in writing. This definition is too narrow. If A agrees to be accountable to B, and the promise be made before, or at the time of the delivery, and the goods be delivered on the strength of A's promise, he is an original promisor. *Copeland* v. *Wadleigh,* 7 Greenl. 141; *Perley* v. *Spring,* 12 Mass. R. 299; *Duval* v. *Trask,* 12 Mass. R. 154.

But even if the defendant was a collateral undertaker, the Judge erred in his instructions. The jury were distinctly given to understand, that if they should find the promise of the defendant to be a collateral undertaking, then there was but one ground on which the plaintiff was entitled to recover; and that was on the ground, that the defendant's promise was made upon some *new* consideration; and that neither the delivery of the rock to the defendant upon his promise, nor any expectation of profit, or hope of benefit, arising from the sale

of goods under his contract with John Doyle, would be a good consideration. If the defendant was a collateral undertaker, from the evidence in the case, the plaintiff was entitled to recover upon several grounds other than the one named by the Judge in his instructions. A promise made upon a new consideration was one ground. A promise made by the defendant, the leading object of which was to subserve his own interest, or promote some purpose of his own, if made upon a good consideration, was another and a distinct ground, upon which the plaintiff was entitled to recover. *Nelson* v. *Boynton*, 3 Metc. 400; Roberts on Frauds, 232; *Edwards* v. *Kelley*, 6 M. & S. 209; *Costling* v. *Aubert*, 2 East, 325. A verbal promise made by a collateral undertaker, the leading object of which is to benefit himself, is not within the statute, if made upon a good consideration. A new consideration is necessary to take the former case out of the statute. This distinction is clearly sustained by the cases cited. Any benefit to the promisor, or any damage, or possibility of loss to the promisee, constitutes a good consideration. *Russell* v. *Babcock*, 14 Maine R. 140; *Cabot* v. *Haskins*, 3 Pick. 93. Where the property is delivered at the time of the promise, or on the strength of the promise, and the promise becomes an essential ground of the credit given to the principal debtor, the parting with the property is a good consideration to support both the promise of the principal debtor, and the collateral undertaker. *Leonard* v. *Vredenburg*, 8 Johns. R. 29; *De-Wolf* v. *Rabaud*, 1 Peters, 476; 3 Kent, 122.

It was also contended, that the instructions relative to the mortgage were erroneous. If the special promise of the defendant was not binding, as within the statute of frauds, still if the defendant claimed and received pay for the rock under his mortgage, he is liable to the plaintiff on the common counts. It is a well settled principle of law, that where a man receives a benefit under a void contract, it being within the statute of frauds, he is liable on the common counts. *Holbrook* v. *Armstrong*, 1 Fairf. 31; *Kidder* v. *Hunt*, 1 Pick. 338; *Lane* v. *Shackford*, 5 N. H. R. 133.

*W. G. Crosby,* for the defendant.

From the bill of exceptions it would seem, that requests for *specific* instructions were made, which the Court *specifically* declined to give. The certificate of the presiding Judge, however, shows that such was not the fact, and "that no request was refused otherwise than by giving the stated instructions only;" so that in fact, the only questions presented to the Court are, were the instructions sufficiently full to cover the case, and were the instructions in themselves correct.

1. The instructions were sufficiently full. The questions presented to the jury, so far as presented by that portion of the testimony embraced in the bill, were, —

1. Was the promise of the defendant original, or collateral ?

2. If collateral, was there a sufficient consideration to take it out of the statute ?

The presiding Judge stated very distinctly to the jury the difference between an original and collateral promise; that if defendant's promise was *original,* he was bound by it ; if *collateral,* he was not bound by it, except it was in writing, or upon a sufficient consideration. Thus meeting the whole case, so far as presented by the testimony reported.

So far as regards what is stated in the bill as the *third* request, it is a sufficient answer, that being hypothetical, unsupported by any testimony, the Court was not bound to notice it or give any instruction touching it; another answer is, that if the plaintiff's counsel is sustained in his position by *law* and *testimony,* he was not entitled to the instruction requested, for the reason that his writ contains no count under which he could avail himself of such a state of law and facts. He could avail himself of it only under a count for money had and received, or a special count setting forth the facts. 12 Pick. 134, *Babcock* v. *Bryant.*

2. The instructions given were correct. 2 Starkie on Ev. 595 ; 14 Wendell, 246, *Larson* v. *Wyman* ; 3 Pick. 94, *Cabot & al.* v. *Haskins & al;* 1 Smith's Leading Cases, 133 ; 18 Pick. 369, *Cahill* v. *Bigelow ;* 1 Dane's Abr. 214, 216 ;

22 Maine R. 395, *Blake* v. *Parlin;* 3 Metc. 396, *Nelson* v. *Boynton;* 1 Wm's Saunders, 211, note 2, *Forth* v. *Stanton;* 21 Maine R. 410, *Hilton* v. *Dinsmore.*

The opinion of the Court was drawn up by

SHEPLEY J. — The case, as exhibited in the testimony, was one shewing, that the plaintiff had made a contract with John Doyle to deliver to him certain stone at an agreed price, to be used in building a dwellinghouse. That the plaintiff before he had delivered the stone, made known to the' defendant his determination not to deliver them upon the credit of John Doyle; and that the defendant thereupon said to him, as the witness Elwell states, "you bring the rock and I will see you paid for it;" and as Edwin Doyle states, sent a message to him at another time, requesting the witness to say to him, "if he will bring the rock, I will see that he has his pay." There is, legally speaking, no essential difference in the promise as proved by these witnesses. It was decided, while this country was but a colony of Great Britain, that such a promise was within the statute of frauds. *Jones* v. *Cooper,* Cowp. 227 ; *Maison* v. *Wharham,* 2 T. R. 80; *Anderson* v. *Hayman,* 1 H. Black. 120. Those cases have been often cited and approved in the more recent decisions.

The counsel for the plaintiff, however, contend, that "the Judge erred in his instructions, as to what constituted an original promise."

The cases cited to sustain the position are those of *Copeland* v. *Wadleigh,* 7 Greenl. 141 ; *Duval* v. *Trask,* 12 Mass. R. 154; *Perley* v. *Spring,* idem. 299. The latter case was substantially overruled in the case of *Cahill* v. *Bigelow,* 18 Pick. 369. The contracts in the two former, on which the defendants were decided to be liable, were made in writing. In the case of *Cahill* v. *Bigelow,* it is said, that when the promise is made, as in this case, before the credit is given, the test to decide, whether one promising is an original debtor or a guarantor, is, whether the credit was given to the person receiving the goods. That test was efficiently applied in this

case by the instructions to the jury, not directly by an inquiry whether the credit was given to the one receiving the goods, but by an inquiry, whether the credit was given to the defendant. It is not perceived, that the jury could have misunderstood, or have been misled by the language used in the instructions. The effect was to inform them plainly, if the rock were delivered to the defendant as an original promisor, the plaintiff would be entitled to recover. As there was testimony in the case tending to prove, that the stone were delivered to the defendant and also tending to prove, that he acted as the agent of John Doyle in receiving them, it was necessary to use some language to denote and have the jury consider, in what character they were delivered to him ; and the words as an original promisor do not appear to have been unsuitable for that purpose. The instructions proceeded to state, if not satisfied that it was so delivered, but were satisfied that it was originally contracted to John Doyle, and that the defendant agreed to see the plaintiff paid for it as surety or guarantor, he would not be liable without other proof. To enable the jury to find a verdict for the defendant under these instructions they must have found, that the rock was not delivered to the defendant on his credit as an original promisor, and that his promise was made as surety or guarantor on a contract originally made with John Doyle. The point of the objection seems to be, that the jury were not by the instructions required also to find, that the stone were actually delivered to John Doyle in performance of that contract, and upon his credit. But if they found that the stone were not delivered on the original promise or on the credit of the defendant, and that his promise was made in the character of a surety or guarantor, it would seem [to follow, that they must have been delivered on the credit of John Doyle, and if not, to be immaterial to ascertain in this suit, on whose credit they were delivered, for the defendant would not be liable, if the other instructions were correct. The instructions further stated, that the defendant would not in such case be liable, unless the jury should find that the promise of the defendant was made " upon some new consideration other

than the delivery of the rock, and that any expectation of profit, or hope of benefit, that might be anticipated from goods, that might be furnished by defendant to John Doyle," could not constitute a sufficient consideration to make such collateral promise binding.

The counsel make a distinction between a new and a good consideration ; and refer to Roberts on Frauds, 232, and to the case of *Nelson* v. *Boynton*, 3 Metc. 396, to sustain it. Mr. Roberts says, " If it spring out of any new transaction, or move to the party promising upon some fresh substantive ground of a personal concern to himself, the statute of frauds does not attach upon such a promise." In other words the promise to be binding, and not within the statute, must spring out of some new transaction, or out of some fresh substantive ground of personal concern to himself. Or in the language of Kent C. J. in the case of *Leonard* v. *Vredenburgh*, 8 Johns. R. 39, it must arise " out of some new and original consideration of benefit or harm moving between the newly contracting parties." In the case of *Nelson* v. *Boynton*, Shaw C. J. speaking of a promise of the like kind says, " the latter if made on good consideration is unaffected by the statute." It is obvious, that the word *good* was not used in a technical sense, to denote a consideration of blood, as distinguishing it from a valuable consideration, but was used with reference to a sufficient or valuable one. And it was not his purpose then to allude to, or consider, whether the contract between the original parties could constitute a good or sufficient consideration between the newly contracting parties. The term, new consideration, is used in many of the decided cases, or words equivalent to them, and is suited to inform the jury clearly, that the collateral or secondary promise must be founded upon a consideration arising between the parties thus contracting, and different from that, upon which the original or first contract was founded.

As it respects the latter clause of this branch of the instructions, the delivery of the stone constituted the consideration of the promise according to the finding of the jury, be-

tween the plaintiff and John Doyle; and could not of course be the consideration of any new promise between the parties, upon which the credit was not given. And any expectation or hope of profit, which the defendant might anticipate, was not a matter, with which the plaintiff had any connexion. It was not a matter "of benefit or harm moving between the newly contracting parties." In the first class of cases as stated by Kent C. J. the consideration for the original and for the collateral undertaking may be the same. But not in those cases, to which these instructions had reference, where the contract is collateral, and not in writing, and yet good, because not within the statute. So far as the case of *Russel* v. *Babcock*, 14 Maine R. 138, may be in conflict with these positions, it was stated in the case of *Hilton* v. *Dinsmore*, 21 Maine R. 433, to be unsupported by authority.

The counsel also insists, that the instructions respecting the mortgage upon the estate of John Doyle were erroneous. The last cargo of stone was delivered in July, 1841. A witness states, that a final settlement was made between the parties to the mortgage in the month of October, 1842, and the balance due upon it ascertained. The argument is, that as "the mortgage was given to secure the gross sum of twenty-five hundred dollars, which might be furnished in goods and materials towards the erection of a house for the mortgagor," it might have been the understanding of the parties, "that the mortgage was to remain and be held as security for the defendant's liability for the rock."

Admitting the mortgage to have been made for the purpose stated, any other claim, than such as might arise from goods and materials furnished for the use of the mortgager, would not be secured by it. A collateral liability, or one assumed as surety or guarantor, would not be within its terms. It cannot be presumed, that any such liability was intended to be secured, for it does not appear, that the defendant ever assumed any to the plaintiff at the request, or with the knowledge of John Doyle. *Exceptions overruled.*